626 So.2d 684 (1993)
In re ADVISORY OPINION TO THE GOVERNOR  SCHOOL BOARD MEMBER  SUSPENSION AUTHORITY.
No. 81617.
Supreme Court of Florida.
November 4, 1993.
*685 J. Hardin Peterson, General Counsel, and Deborah K. Kearney, Office of the Governor, Tallahassee, for petitioner, Governor Lawton Chiles.
Richard H. Langley, Clearmont, for Lake County School Bd., and Dana P. Hoffman and Jackson O. Brownlee of Brownlee, Hoffman & Jacobs, P.A., Orlando, for Diane B. Rowden, interested parties.
 The Honorable Lawton Chiles
 Governor, State of Florida
 The Capitol
 Tallahassee, Florida 32301
Dear Governor Chiles:
We acknowledge receipt of your communication of April 16, 1993, requesting our opinion concerning your executive powers and duties to suspend school board members under article IV, section 7(a), of the Florida Constitution.[1] Omitting the formal parts, your letter reads as follows:
Pursuant to Article IV, Section 1(c) of the Constitution of the State of Florida, I have the honor to request your written opinion concerning my executive powers and duties under Article IV, Section 7(a) of the Constitution of the State of Florida. This Court has previously determined that such a request is within the purview of Article IV, Section 1(c) of the Constitution of the State of Florida by responding to similar requests. See e.g., In re Advisory Opinion to the Governor Request of July 12, 1976, 336 So.2d 97 (Fla. 1976) and In Re Advisory Opinion to the Governor, 298 So.2d 366 (Fla. 1974).
On February 18, 1993, by Executive Order 93-60, and pursuant to Section 112.52, Florida Statutes, I suspended and removed a member of the school board of Hernando County based on the fact that she committed and was convicted of misdemeanors directly related to her official duties. This officer pled nolo contendere to each of thirteen misdemeanor counts, was adjudicated guilty of one count and adjudication was withheld on the remaining counts. Section 112.52, Florida Statutes, applies to public officers with regard to whom no other method for removal from office is provided by the state constitution or by law.
By lawsuit filed in the Circuit Court for Hernando County, among other issues, this officer filed for declaratory relief claiming to be a county officer, subject only to suspension pursuant to Article IV, Section 7(a) of the Florida Constitution, and not a district officer subject to suspension and *686 removal pursuant to § 112.52, Fla. Stat., as I had determined.
While this Court's opinion as to whether a school board member is a district or county officer would obviously assist me in my conduct as to that one issue in the Hernando County School Board member's suit, please also be aware that I regularly receive complaints against school district officers.
The 1885 Constitution gave the governor the power to suspend all appointed or elected public officials not subject to impeachment, on the grounds of "malfeasance, or misfeasance, or neglect of duty in office, for the commission of any felony, or for drunkenness or incompetency." Art. IV, § 15, Fla. Const. (1885). The 1968 Revision to the Florida Constitution substantially revised the suspension scheme. The current suspension power is essentially the same with regard to state and county officers; however, the suspension scheme relating to municipal officers is left largely to general law with the limitation that general law cannot preclude the governor from suspending a municipal officer who is indicted for crime. Art. IV, §§ 7(a) and (c) (1968). Other public officers, that is, "district" officers were not mentioned in the revision.
Recognizing the absence of a suspension scheme for district officers, in 1980 the Legislature adopted a scheme for the removal of a public official when a method is not otherwise provided in the constitution or by law. § 112.52, Fla. Stat. From the adoption of the 1968 constitutional revision until 1980, there were many district officers who were not subject to any suspension and removal procedure.
The records of this office indicate that since the 1968 Revision became effective, twelve school board members and two superintendents of schools were suspended by various governors, all pursuant to Article IV, Section 7 of the Florida Constitution. We are not aware of any challenge brought by a suspended school district officer on the basis that the constitutional suspension power did not apply. Since 1980, when the Legislature enacted a suspension and removal procedure for all officers not otherwise subject to suspension and removal, three of the aforementioned twelve school board members were suspended pursuant to Article IV, Section 7(a), Fla. Const. Of that number, one was suspended after the 1984 attorney general opinion which construed school board members to be district officers. Op. Att'y Gen. Fla. 84-72 (1984), infra.

A previous request for advisory opinion made by Governor Askew noted that the 1968 Constitution did not extend the suspension power to officers of governmental entities other than state and county officers and queried (but not in the denominated questions), whether an appointed district school superintendent, if an officer at all, would be a county officer. In re Advisory Opinion to the Governor, supra, 298 So.2d at 368. Because this Court found an appointed superintendent not to be an officer, the nature of a school board officer was never squarely addressed. However, in dicta the Court supposed that if a school board failed to act properly "it is they who are subject to suspension by the Governor and removal by the Senate under the terms of the section of our constitution in question here, viz., Art. IV, § 7." Id. at 370.
In one of a series of opinions relating to district officers and the prohibition against dual office holding, (see e.g., Op. Att'y Gen. Fla. 71-324, 73-47, 75-153, 80-16, 78-74, 84-72, 85-24, 86-55), the Attorney General determined that school district officers were not county officers subject to the prohibition, but were instead district officers. Op. Att'y Gen.Fla. 84-72 (1984). The Attorney General advised that a member of the Broward County District School Board may also serve on the Performing Arts Center Authority for Broward County because school board members are constitutionally and statutorily denominated district officers and are not state, county, or municipal officers subject to the dual office-holding prohibition. Id. See also, Op. Att'y Gen. 83-53 (1983).
The Attorney General noted that Article IX, Section 4(a), of the Florida Constitution *687 "provides for the creation of school districts". Id. Additionally, throughout Article IX and the relevant Florida Statutes, the governmental unit overseeing the operation of public schools is consistently referred to as a school district.

Article IX, Section 4(a) of the Florida Constitution goes on to allow two or more contiguous counties to combine into one school district, clearly anticipating that the boundaries of a school district may not in fact be identical to the county boundaries. Nor does the fact of identical boundaries of a district with a county presuppose that the district's officers are county officers. For example, the jurisdiction of the Tampa Sports Authority is coterminous with Hillsborough County boundaries.
The following question has been a recurring question throughout this and other administrations and poses doubt concerning my authority. Your determination of this question would direct me whether to rely upon the constitutional or statutory suspension scheme, (Art. IV § 7, Fla. Const. or § 112.52, Fla. Stat.), in addressing complaints. The very grounds upon which my jurisdiction arises is substantially different between the two provisions. This issue will not be put to rest until Florida's highest court has construed this constitutional provision. For the reasons expressed herein and in the interest of judicial economy, I, therefore, have the honor to request your written opinion as to:
Whether a district school board member is a county officer for the purposes of my suspension authority pursuant to Article IV, Section 7(a) of the Constitution of the State of Florida.
The above request was supplemented by your letter of May 17, 1993, which brought to our attention that the 1993 Legislature "passed House Bill 1545 pertaining to the compensation of district school board members and adding district school board members to the list of constitutional officers under chapter 145, Florida Statutes"; that "the Legislature amended the introductory phrase `county officers' by deleting the word `county'"; that "the bill analysis prepared by the House Committee on Community Affairs for House Bill 1545 states, `Chapter 80-377, Laws of Florida, moved the statutes governing salary calculations for school board members (who are not county officers) from chapter 145 to chapter 230, F.S'"; that "[t]he bill analysis for chapter 80-377 indicates that district school officials are not county officers and that they had been included in chapter 145 for salary purposes only"; that "the report concluded that `these are district officers, rather than those of the county.'" You then concluded that "[t]hese documents appear to demonstrate that the Legislature, as well as the Attorney General, has determined that district school board members are district officers rather than county officers."
The single question presented by these letters is whether a school board member is a "county" officer, in which event he or she may be suspended only under article IV, section 7(a), or a "district" officer, in which event the school board member could be suspended under the statutory authority of section 112.51, Florida Statutes (1991). For the reasons expressed in this opinion, we conclude that an elected school board member may be suspended by the governor only under the authority granted in article IV, section 7.
At the outset it is necessary to recount the history of the constitutional suspension provision and explain how this authority has been applied since the adoption of the present provision in 1968. Under the Florida Constitution of 1885, the suspension authority of the governor was found in article IV, section 15. The relevant portion of this section read as follows:
Section 15. All officers that shall have been appointed or elected, and that are not liable to impeachment, may be suspended from office by the Governor for malfeasance, or misfeasance, or neglect of duty in office, for the commission of any felony, or for drunkenness or incompetency, and the cause of suspension shall be communicated to the officer suspended and to the Senate at its next session.
This language was revised in the 1968 revision to the Florida Constitution. The new constitutional provision dealing with the governor's *688 suspension authority is article IV, section 7. It reads as follows:
(a) By executive order stating the grounds and filed with the secretary of state, the governor may suspend from office any state officer not subject to impeachment, any officer of the militia not in the active service of the United States, or any county officer, for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform his official duties, or commission of a felony, and may fill the office by appointment for the period of suspension. The suspended officer may at any time before removal be reinstated by the governor.
... .
(c) By order of the governor any elected municipal officer indicted for crime may be suspended from office until acquitted and the office filled by appointment for the period of suspension, not to extend beyond the term, unless these powers are vested elsewhere by law or the municipal charter.
Art. IV, § 7, Fla. Const. (emphasis added).
In the Commentary to the 1968 revision, Talbot "Sandy" D'Alemberte compared the new suspension provision in article IV, section 7, to the provision in the Constitution of 1885:
Subsection (a).
....
The 1885 Constitution in Article IV, Section 15 provided that "all officers appointed or elected, and that were not liable to impeachment" were subject to the Governor's power of suspension. The new constitution, by designating specifically state officers not subject to impeachment, officers of the militia, and any county officer, limited the broader provision in the 1885 Constitution. Specifically, municipal officers are no longer included in the broad language of the Governor's power of suspension but are covered instead, in a limited manner, by Article IV, Section 7(c).
....
Subsection (c). This subsection provides in a very limited form the authority of the governor to suspend elected municipal officers... .
Elected municipal officers under this subsection are subject to the power of suspension only if they have been indicted for a crime and even that power is subject to a contrary provision in a municipal charter or general law.
26 Fla. Stat. Ann. 101-02, Commentary (1970) (emphasis added).
A comparison of the 1885 constitutional provision with the current provision regarding the governor's suspension authority clearly establishes that the authors of the 1968 revision to the Florida Constitution intended to limit the broader suspension power provided in the 1885 Constitution and to make it more specific as to the officers subject to the governor's suspension authority. It is also clear that, even after the 1968 revision added this limiting language, both this Court and the governors who have suspended school board members considered elected school board members to be "county officers" for the purpose of suspension. This Court, in an advisory opinion issued to the governor in 1974, distinguished between an elected and an appointed superintendent of public instruction, and held that an appointed superintendent was not subject to suspension under article IV, section 7. In so doing, we stated:
If the employer School Board fails to act properly in the circumstances, then such school board members as may be responsible are answerable to the electorate. Furthermore, it is they who are subject to suspension by the Governor and removable by the Senate under the terms of the section of our constitution in question here, viz., Art. IV, § 7.

In re Advisory Opinion to the Governor, 298 So.2d 366, 370 (Fla. 1974) (emphasis added). Furthermore, as noted in your letter seeking this advisory opinion, twelve school board members have been suspended by the governor since the 1968 revision and all were suspended pursuant to article IV, section 7. See 26 Proclamations & Exec. Orders 303-09; 313-14; 319 (1970) (five suspensions); Fla.Exec.Orders Nos. 72-12 (Feb. 21, 1972), 77-50 (Sept. 19, 1977), 77-51 (Sept. 1977), 79-82 (Sept. 27, 1979), 81-103 (Sept. 2, 1981), *689 83-25 (Feb. 4, 1983), and 85-87 (Apr. 5, 1985).
In your letter, you note that, in order to provide a means for the suspension of officials who are not covered by article IV, section 7, the Legislature enacted section 112.52, which reads as follows:
(1) When a method for removal from office is not otherwise provided by the State Constitution or by law, the Governor may by executive order suspend from office an elected or appointed public official, by whatever title known, who is indicted or informed against for commission of any felony, or for any misdemeanor arising directly out of his official conduct or duties, and may fill the office by appointment for the period of suspension, not to extend beyond the term.
(2) During the period of the suspension, the public official shall not perform any official act, duty, or function or receive any pay, allowance, emolument, or privilege of his office.
(3) If convicted, the public official may be removed from office by executive order of the Governor. For the purpose of this section, any person who pleads guilty or nolo contendere or who is found guilty shall be deemed to have been convicted, notwithstanding the suspension of sentence or the withholding of adjudication.
(4) If the public official is acquitted or found not guilty, or the charges are otherwise dismissed, the Governor shall by executive order revoke the suspension; and the public official shall be entitled to full back pay and such other emoluments or allowances to which he would have been entitled had he not been suspended.
This section was enacted to ensure that the governor has the authority to suspend those officials who are not covered under article IV, section 7, particularly district officers and members of boards and commissions whom the governor appoints.
Two additional portions of the Florida Constitution provide further background for this issue. Article VIII, entitled "Local Government," sets forth the responsibilities and operation of counties and municipalities. In section 1(d), the article identifies "county officers" as the sheriff, tax collector, property appraiser, supervisor of elections, and clerk of the circuit court. Interestingly, county commissioners are not identified as county officers but as "commissioners" under section 1(e). Article IX, entitled "Education," establishes the organization and operational responsibilities of educational governmental entities. Article IX, section 4, provides that "[e]ach county shall constitute a school district" and that "[i]n each school district there shall be a school board composed of five or more members chosen by vote of the electors... ." Article IX, also provides in section 5 for an elected superintendent of schools unless the electors change that position to one appointed by the school board.
While an argument can be made that the suspension provision in article IV, section 7, should be construed narrowly and that school board members should be characterized as "district" rather than "county" officers, we find that a broader construction is appropriate. We reach this conclusion because it is apparent that the public looks at both school board members and county commissioners as "county" officials, who have equivalent power and authority, albeit in different local governmental spheres. We recognize that article VIII, section 1(d), defines certain "county officers." We note, however, that the county officers defined in section 1(d) could not have been intended to be the only "county" officers subject to the suspension provisions of article IV, section 7, because that provision does not include county commissioners within the definition of a county official. The duties and governing authority of county commissioners are set forth in article VIII, section 1(e). School board members' duties and authority are found in article IX, sections 4(a) and 4(b), which provides that "each county shall constitute a school district" and that school board members shall "operate, control, and supervise" the schools within the county (emphasis added). Article IX, section 5, provides for a superintendent of schools, who is an elected officer unless the electors change that position to one appointed by the school board. We find that the following are county officers within the intent of article IV, section 7: the officers identified in article *690 VIII, section 1(d); county commissioners identified in article VIII, section 1(e); school board members identified in article IX, sections 4(a) and 4(b); and the elected superintendent of schools identified in article IX, section 5. In reaching this conclusion, we are not writing on a clean slate. For the last twenty-one years, both this Court and the executive branch have applied article IV, section 7, to school board members[2] and superintendents of schools. To now accept a narrow construction would require us to recede from our decision in In re Advisory Opinion to the Governor, 298 So.2d 366 (Fla. 1974), which, as previously noted, holds that school board members are subject to suspension by the governor under article IV, section 7.
Your letter also brings to our attention an opinion of the attorney general in which the attorney general determined that the prohibitions against dual office-holding set out in article II, section 5(a), of the Florida Constitution[3] do not apply to school board members because of the attorney general's belief that school board members are "district" officers rather than "county" officers. See Op. Att'y Gen.Fla. 84-72 (1984). You further note that, if we hold that school board members are "county" officers, there may be school board members who are in fact holding dual offices because of this attorney general opinion and that these dual office holders would be required to forfeit their first-held office. With regard to those individuals who may be holding dual offices because of the attorney general's opinion 84-73, we conclude that this opinion should be prospective in its application. This prospective application should apply only until such time as the term of one of the dual offices expires.
In conclusion, we answer your inquiry in the affirmative and find that a district school board member is a "county" officer for the purposes of your suspension authority under article IV, section 7(a), of the Florida Constitution.
 /s/ Rosemary Barkett
 Rosemary Barkett
 Chief Justice
 /s/ Ben F. Overton
 Ben F. Overton
 Justice
 /s/ Leander J. Shaw
 Leander J. Shaw
 Justice
 /s/ Stephen H. Grimes
 Stephen H. Grimes
 Justice
 /s/ Gerald Kogan
 Gerald Kogan
 Justice
 /s/ Major B. Harding
 Major B. Harding
 Justice
McDONALD, Justice.
I respectfully disagree with my colleagues that a district school board member is a county officer for the purposes of the Governor's suspension authority pursuant to article IV, section 7(a) of the Florida Constitution. County officers are defined in article VIII, section 1 of the Florida Constitution. School boards and their members attain existence by virtue of article IX, section 4, and nowhere in the constitution are they defined as county officers. I conclude that the references made to county officers in article IV, section 7(a) encompasses only those officers, described in article VIII, section 1 of the *691 constitution, who perform general governmental functions for the county.
I believe the Governor has authority to remove a school board member under the provisions of section 112.52, Florida Statutes (1991), and not under article IV, section 7(a).
NOTES
[1] We have jurisdiction pursuant to article IV, section 1(c), Florida Constitution.
[2] It is interesting to note that Governor Reuben O'D. Askew, who entered executive orders 72-12, 77-50, and 77-51, suspending school board members under the provisions of article IV, section 7(a), was a member of the 1968 Constitution Revision Commission and the Legislature that placed that provision before the people. Further, Justice B.K. Roberts, who participated in the majority advisory opinion to the governor in 298 So.2d 366, was also a member of the 1968 Constitution Revision Commission.
[3] Article II, section 5(a), Florida Constitution, reads as follows:

No person holding any office of emolument under any foreign government, or civil office of emolument under the United States or any other state, shall hold any office of honor or of emolument under the government of this state. No person shall hold at the same time more than one office under the government of the state and the counties and municipalities therein, except that a notary public or military officer may hold another office, and any officer may be a member of a constitution revision commission, taxation and budget reform commission, constitutional convention, or statutory body having only advisory powers.